## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS CUSHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FORTRESS BIOTECH, INC., LINDSAY A. ROSENWALD, and ROBYN M. HUNTER,<br><br>Defendants. | Case No. 1:20-cv-05767-KAM-RLM |

**SRIKANTH SARAVANAN'S OBJECTIONS PURSUANT TO FED. R. CIV. P. 72(a) TO THE MAGISTRATE JUDGE'S ORDER DATED MARCH 24, 2020 APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL**

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    PROCEDURAL HISTORY ......................................................................................3

III.   OBJECTION LEGAL STANDARD........................................................................4

IV.   THE PSLRA LEGAL STANDARD AND ITS APPLICATION IN THE ORDER...........4

V.    THE ORDER FAILS TO APPLY THE *VARGHESE* FACTORS TO DETERMINE GROUP ADEQUACY, AND MAKES MULTIPLE SUBSTANTIAL FACTUAL ERRORS IN ITS ANALYSIS........................................................................................5

VI.   SARAVANAN SHOULD BE APPOINTED AS LEAD PLAINTIFF IF THE ERRORS IN THE ORDER ARE CORRECTED .......................................................................8

VII.  CONCLUSION .....................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Chauhan v. Intercept Pharmaceuticals*,
No. 21-cv-00036, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021)...........................................*passim*

*Cohen v. Luckin Coffee Inc.*,
No. 1:20-cv-01293, 2020 WL 3127808 (S.D.N.Y. June 12, 2020)......................................8, 10

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-cv-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ....................................................4

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015) ....................................................................................11

*Jakobsen v. Aphria, Inc.*,
No. 18-cv-11376, 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ...........................................11

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) .......................................................................................8

*Kniffin v. Micron Tech., Inc.*,
379 F. Supp. 3d 259 (S.D.N.Y. 2019) .......................................................................................9

*McDermid v. Inovio Pharm., Inc.*,
467 F. Supp. 3d 270 (E.D. Pa. 2020).......................................................................................10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011)................................................................................................9

*Storms v. United States*,
No. 13-cv-0811, 2014 WL 3547016 (E.D.N.Y. July 16, 2014) .................................................4

*Tsirekidze v. Syntax-Brillian Corp.*,
No. 07-cv-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008)......................................................10

*United States v. Murphy*,
703 F.3d 182 (2d Cir. 2012) .......................................................................................................4

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ...............................................................................2, 5, 8

*Weiner v. McKeefery*,
No. 11-cv-2254, 2014 WL 2048381 (E.D.N.Y. May 19, 2014).................................................4

**STATUTES**

15 U.S.C. § 78u-4 ...........................................................................................3, 4, 5

28 U.S.C. § 636(b)(1)(A)........................................................................................4

**RULES**

FED. R. CIV. P. 23 ...............................................................................................1, 5

FED. R. CIV. P. 72(a) .......................................................................................1, 4, 7

Lead Plaintiff Movant Srikanth Saravanan ("Saravanan") respectfully submits this memorandum of law pursuant to Rule 72(a) of the Federal Rules of Civil Procedure ("Rule 72(a)") in objection to Magistrate Judge Roanne L. Mann's Memorandum and Order dated March 24, 2021 (the "Order," Dkt. No. 18) appointing Yasser Abed ("Abed") and Evay Avbenake ("Avbenake") (the "AA Group") as Lead Plaintiff and approving Pomerantz LLP as Lead Counsel. The Order is based on factual errors and is contrary to the mandate of the Private Securities Litigation Reform Act of 1995 ("PSLRA") to appoint the "most adequate plaintiff" as lead plaintiff.

## I. INTRODUCTION

This is a securities fraud class action alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA. Pursuant to the PSLRA, the Court shall appoint the "most adequate plaintiff" as lead plaintiff. The movant with the largest financial interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff. This presumption may be rebutted upon proof that the most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

The AA Group and Saravanan each moved for appointment as lead plaintiff. The Order identifies the AA Group as the movant with the largest financial interest, and the presumptively most adequate plaintiff. *See* Order at 5-10. The Order, however, incorrectly holds that the AA Group is an adequate class representative, and therefore improperly fails to eliminate the AA Group from consideration for appointment as lead plaintiff. *See* Order at 13-14.

The Order framed its holding that the AA Group is adequate as part of the analysis of whether the presumption that the AA Group is the most adequate plaintiff had been rebutted. *See*

1

Order at 11 (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008)). However, *Varghese* held that "a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers *before* its members will be designated as presumptive lead plaintiffs." *Varghese*, 589 F. Supp. 2d at 392 (emphasis added).[1] Regardless of where in the analysis the AA Group's adequacy is considered, however, the result is the same: the AA Group is inadequate since it has failed to make an evidentiary showing that it "will be able to function cohesively and to effectively manage the litigation apart from their lawyers." *Id.*

The Order correctly identifies the *Varghese* factors to be considered when determining whether a proposed group is adequate: (1) the existence of a pre-litigation relationship between group members; (2) group members' involvement in litigation thus far; (3) plans for cooperation between group members; (4) the sophistication of group members; and (5) whether the members chose outside counsel, and not vice versa. *See* Order at 11. Yet, the Order fails to apply these factors in its analysis. When actually applied the *Varghese* factors dictate that the AA Group is inadequate. This is because the AA Group members have no pre-litigation relationship, their involvement in the litigation has been minimal, they offered no substantive or robust plan for communication, and they conceded that their group was formed by their lawyers. This cobbled-together group is exactly the type the PSLRA was put in place to prevent.

Moreover, the Order contains two substantial factual errors in its reasoning distinguishing this case from *Chauhan v. Intercept Pharmaceuticals*, No. 21-cv-00036, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021). The Order incorrectly claims that the group rejected in *Chauhan* did not provide "evidence of a process for dispute resolution" and that it's members "lived on several

---

[1] All internal citation, quotation marks, and brackets are omitted herein unless otherwise noted.

different continents." Order at 12-13. The group in *Chauhan* did provide a dispute resolution mechanism (one nearly identical to the dispute resolution mechanism in this case), and lived on the same continent, but was rejected regardless—just as the AA Group should be rejected here.

If the errors in the Order are corrected, the AA Group should be deemed inadequate to represent the class, and its lead plaintiff motion should be denied. Since Saravanan is the movant with the next largest financial interest, and the only remaining movant, Saravanan should be appointed as lead plaintiff and his selection of counsel should be approved. Therefore, Saravanan respectfully requests that the Order be vacated, and that Saravanan's motion for appointment as lead plaintiff (Dkt. No. 8) be reconsidered by the District Court.

## II.    PROCEDURAL HISTORY

On November 27, 2020, Plaintiff Thomas Cushman commenced the above-captioned class action against Fortress Biotech, Inc. and certain officers alleging violations of the anti-fraud provisions of the federal securities laws. *See* Dkt. No. 1.

The PSLRA provides a process by which investors may apply to be appointed as the lead plaintiff in securities class actions. *See* 15 U.S.C. § 78u-4. On January 26, 2021, Saravanan and the AA Group filed competing motions for appointment as lead plaintiff and approval of their respective selection of counsel. *See* Dkt. Nos. 8, 11. The movants filed opposition memoranda on February 9, 2021. *See* Dkt. No. 14 ("Saravanan Opp."); Dkt. No. 15 ("AA Group Opp."). And the movants filed reply memoranda on February 16, 2021. *See* Dkt. No. 17 ("Saravanan Reply"); Dkt. No. 16 ("AA Group Reply").

On March 24, 2021, Magistrate Judge Roanne L. Mann entered the Order appointing the AA Group as Lead Plaintiff and approving their selection of Pomerantz LLP as Lead Counsel.

## III. OBJECTION LEGAL STANDARD

Rule 72(a) provides that "[t]he district judge . . . must consider timely objections and modify or set aside any part of [a magistrate judge's non-dispositive pretrial ruling] that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

An order is "clearly erroneous if, based on all the evidence, a reviewing court is left with the definite and firm conviction that a mistake has been committed." *Storms v. United States*, No. 13-cv-0811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Weiner v. McKeefery*, No. 11-cv-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014). An order also misapplies and is contrary to law where it fails to consider criteria which could lead to a different decision under existing case law. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (vacating a magistrate judge's order appointing a lead plaintiff because it "decline[d] to consider the implications of loss causation when applying the PSLRA standard").

The Magistrate Judge erroneously appointed the AA Group as lead plaintiff and approved the AA Group's choice of lead counsel. Under the proper application of the relevant statutes and case law, Saravanan should be appointed as lead plaintiff and Saravanan's choice of lead counsel should be approved.

## IV. THE PSLRA LEGAL STANDARD AND ITS APPLICATION IN THE ORDER

The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," *i.e.*, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

4

The PSLRA also provides a "rebuttable presumption" that the "most adequate plaintiff" is the movant that "has either filed the complaint or made a motion," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Order identifies the AA Group as the presumptively most adequate plaintiff. *See* Order at 10.

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is rebutted, the Court should consider the movant with the next largest financial interest and repeat the process until a suitable lead plaintiff is identified. *Varghese*, 589 F. Supp. 2d at 396 n.7.

The Order fails to correctly analyze whether the AA Group will fairly and adequately protect the interests of the class—*i.e.* whether the AA Group is inadequate. *See* Order at 10-14. Correctly analyzed, the AA Group is inadequate.

## V. THE ORDER FAILS TO APPLY THE *VARGHESE* FACTORS TO DETERMINE GROUP ADEQUACY, AND MAKES MULTIPLE SUBSTANTIAL FACTUAL ERRORS IN ITS ANALYSIS

The Order initially sets out the correct test for determining whether the AA Group is adequate. *See* Order at 11 (citing *Varghese*, 589 F.Supp.2d at 394). *Varghese* held that "a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers." *Varghese*, 589 F. Supp. 2d at 392. The Order identifies the five *Varghese* factors that courts rely on to determine whether a group has made the required showing: "(1) the existence of a pre-litigation relationship between group members; (2) group members' involvement in litigation thus far; (3) plans for cooperation between

group members; (4) the sophistication of group members; and (5) whether the members chose outside counsel, and not vice versa." Order at 11.  The Order, however, fails to apply the factors.

Instead, immediately after setting forth the *Varghese* factors, the Order recognizes that other courts have appointed groups of unrelated investors. *See* Order at 11. Given that relatedness is only one *Varghese* factor, it is not surprising that there are cases in which relatedness was not outcome-determinative. Then, the Order sets out three reasons for its holding that the AA Group is cohesive: (1) "the AA Group is comprised of two people" (2) "the AA Group has agreed upon a conflict-resolution mechanism between co-lead plaintiffs," and (3) "unlike the proposed group in *Chauhan*, whose members lived on several different continents, the proposed co-lead plaintiffs in this litigation live in Ottawa and Denver." *See* Order at 13. The Order's reasoning is factually and legally incorrect.

First, group size is not a *Varghese* factor. While the Order correctly ascertains that some courts have looked to group size as an additional factor to consider, group size is not outcome-determinative and does not outweigh the other *Varghese* factors. *See, e.g.*, *Chauhan*, 2021 WL 235890, at *4-*5 (rejecting a group of two).

Second, the existence of a dispute resolution mechanism is not, itself, a *Varghese* factor. The existence of a dispute resolution mechanism may speak somewhat to the second or third *Varghese* factors ("involvement in the litigation so far" or "plans for cooperation"), but it does not carry enough weight to be one of three reasons a group is cohesive. For example, the court in *Chauhan* rejected a group of two and found that the second and third *Varghese* factors weighed against the group's cohesion even though the group submitted a joint declaration in which they offered the following dispute resolution mechanism: "in the unlikely event that a disagreement arises, we agree to that [sic] our respective voting power will be determined in proportion to the

amount of Class Period losses suffered by each group member."[2] *Chauhan*, 2021 WL 235890, at *4-*5. To this point, the Magistrate Judge incorrectly stated in the Order that the group in *Chauhan* did not "provide[] . . . evidence of a process for dispute resolution." Order at 12. The group certainly did. Moreover, the dispute resolution mechanism of the group rejected in *Chauhan* is nearly identical to the dispute resolution mechanism the AA Group offers here: "In the event that . . . a disagreement arises, we agree to resolve such disagreement by a majority vote, in which each of us possesses a number of votes equal to our losses." Dkt. No. 13-4 ("Joint Decl.") ¶ 9. In addition, this dispute resolution mechanism strips the smaller AA Group member of his decision-making authority, which effectively appends the smaller member's loss to the larger member's, without substantially affecting the larger member's authority or rights. This further demonstrates that the purpose of forming the AA Group was to aggregate losses.

Third, the Order misstates the facts and holding in *Chauhan* when it claims that the members of the two-member group rejected in *Chauhan* "lived on several different continents." *See* Order at 13. The two members in *Chauhan* lived in California and Ohio. *See Chauhan*, 2021 WL 235890, at *4. Here, the AA Group members live in Ottawa, Canada, and Denver, Colorado which are in different countries and approximately 1,750 miles apart by car. Physical proximity is not a *Varghese* factor, but does speak to the first, third and fifth factors: existence of a pre-litigation relationship, plans for cooperation, and whether the group was formed by counsel. The fact is that the AA Group members live in different countries, but the movants in *Chauhan* lived in the *same country*. As such, the logic applied in *Chauhan* applies with equal or greater force here since there

---

[2] *See* Declaration of Gregory B. Linkh in Support of Srikanth Saravanan's Objections Pursuant to Fed. R. Civ. P. 72(a) to the Magistrate Judge's Order Dated March 24, 2020 Appointing Lead Plaintiff and Approving Lead Counsel, Exhibit A, ¶ 12.

is admittedly no evidence of a preexisting relationship or that the AA Group was not formed by its counsel.

In sum, the Order failed to analyze the *Varghese* factors and was based on multiple incorrect factual premises.

## VI. SARAVANAN SHOULD BE APPOINTED AS LEAD PLAINTIFF IF THE ERRORS IN THE ORDER ARE CORRECTED

If the errors in the Order are corrected, the AA Group should be deemed inadequate to represent the class since the AA Group—being a creation of its lawyers—has not proffered an evidentiary showing that its members will be able to function cohesively and to effectively manage the litigation apart from their lawyers. *See Varghese*, 589 F. Supp. 2d at 392; Saravanan Opp. at 3-7.

First, the AA Group concedes, and the Order accepts, that Abed and Avbenake have no pre-litigation relationship. *See* Order at 11; AA Group Reply at 4. Accordingly, the first *Varghese* factor weighs against appointment of the AA Group. *See Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293, 2020 WL 3127808, at *4 (S.D.N.Y. June 12, 2020) (rejecting a group that "apparently did not even know of one another before counsel introduced them"); *Chauhan*, 2021 WL 235890, at *4 (rejecting a group of two who "provide[d] no evidence that they had a pre-litigation relationship").

Second, the AA Group concedes, and the Order accepts, that Abed and Avbenake's involvement in this litigation so far is limited to some discussion about the case with their counsel, and one conference call with each other, which were memorialized in a joint declaration. *See* Order at 13; AA Group Reply at 4. Accordingly, the second *Varghese* factor weighs against appointment of the AA Group. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) (rejecting a group whose "only involvement in the litigation thus far appears to have been a single conference call"). *Cohen*, 2020 WL 3127808, at *4 (a "boilerplate" joint declaration stating

that the group members discussed the case, strategy, and their lead plaintiff responsibilities with their lawyers "does not provide evidence that any member of the group—much less the group as a whole—has had significant involvement in the litigation thus far"); *Chauhan*, 2021 WL 235890, at *4 (similar).

Third, the AA Group concedes, and the Order does not contest, that the AA Group did not submit a plan for communication. *See* AA Group Reply (failing to address the lack of a communication plan); Order at 11-13 (three times recognizing the importance of communication and a communication plan, but not identifying a communication plan submitted by the AA Group). Regarding communication, Abed and Avbenake only state in their joint declaration that they "ha[ve] one another's contact information" and that they will "confer[] with each other and with our counsel regarding litigation strategy and other matters." Joint Decl. ¶¶ 4, 7. Accordingly, the third *Varghese* factor weighs against appointment of the AA Group. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) ("vague discussions of general communication protocols and status reports hashed out over preliminary conference calls" and "boilerplate plans for cooperation" did not establish that a proposed group would work effectively and cohesively as lead plaintiff) (citing *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011)); *Chauhan*, 2021 WL 235890, at *5 ("boilerplate language" regarding a plan for communication is insufficient).

Fourth, the AA Group concedes, and the Order accepts, that the AA Group was formed by its counsel. *See* AA Group Reply (declining to dispute the claim that the AA Group was formed by its counsel); Order at 11. Abed and Avbenake are represented by two firms: Pomerantz LLP and The Schall Law Firm. *See* Dkt. No. 11 at 3-4 (the signature block of the AA Group's lead plaintiff motion). Avbenake claims to be represented by The Schall Law Firm but Abed does not.

*See* Joint Decl. ¶ 3. Abed and Avbenake's certifications were signed on October 21, 2020 and January 25, 2021, respectively, which indicates that they each separately retained counsel and that their counsel introduced them for purposes of forming a lead plaintiff group. Accordingly, the fifth *Varghese* factor weighs against appointment of the AA Group. *See Cohen*, 2020 WL 3127808, at *4 ("[T]here is every reason to believe that the members agreed to be assembled by counsel and to ratify counsel's representation of them—rather than that they gathered together and engaged in a truly independent selection of counsel."); *Chauhan*, 2021 WL 235890, at *5 (similar).

In sum, based on the AA Group's own admissions, four of the five *Varghese* factors weigh against finding that the AA Group has proffered an evidentiary showing that its members will be able to function cohesively and to effectively manage the litigation apart from their lawyers. Moreover, all indications are that the AA Group is a construction of its counsel, cobbled together to achieve lead plaintiff (and lead counsel) status.[3] A nearly identical group was rejected in *Chauhan*. Accordingly, the AA Group is inadequate, and its lead plaintiff motion should have been denied.

Effectively conceding that they were an improper group, the AA Group members made a last-ditch attempt to save their fundamentally flawed motion, expressing their willingness in their reply memorandum to "serve as Lead Plaintiffs either together or separately." *See* AA Group Reply at 5. In reality, this "eleventh-hour willingness to discard" the group only serves to further demonstrate that the AA Group is not cohesive. *See McDermid v. Inovio Pharm., Inc.*, 467 F. Supp. 3d 270, 280 (E.D. Pa. 2020); *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL

---

[3] The Order correctly recognizes that courts often reject groups cobbled together for the purpose of artificially inflating losses (*see* Order at 7), but the Order errs in reasoning that "there is nothing artificial about the magnitude of the AA Group's financial interest, as each of its two members suffered losses that dwarf the . . . loss sustained by Saravanan." *Id.* The fact that their losses happen to be larger does not speak to whether they were cobbled together by their counsel since "at the time they decided to form the group and submit their application . . . they had no idea who the other movants would be or the size of their losses." *Chauhan*, 2021 WL 235890, at *5.

942273, at \*4 (D. Ariz. Apr. 7, 2008) ("The willingness to abandon the group only suggests how loosely it was put together."). Regardless, Abed and Avbenake should not be considered individually for appointment as lead plaintiff because they did not file motions requesting to be considered individually. *See Chauhan*, 2021 WL 235890, at \*6; *Jakobsen v. Aphria, Inc.*, No. 18-cv-11376, 2019 WL 1522598, at \*4 n.3 (S.D.N.Y. Mar. 27, 2019); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 624 n.4 (S.D.N.Y. 2015).

If the AA Group is eliminated from consideration for appointment as lead plaintiff, Saravanan should be considered for appointment as lead plaintiff since he is the movant with the next largest financial interest (and the only remaining movant). Since no movant has provided proof that Saravanan is inadequate or subject to unique defenses, Saravanan should be appointed as lead plaintiff and his selection of counsel should be approved.

## VII. CONCLUSION

For the foregoing reasons, Magistrate Judge Roanne L. Mann's Memorandum and Order dated March 24, 2021 should be vacated, Saravanan should be appointed as lead plaintiff, and his choice of counsel should be approved.

DATED: April 7, 2021        **GLANCY PRONGAY & MURRAY LLP**

By:    */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

-and-

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Srikanth Saravanan and Proposed Lead Counsel for the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

12

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On April 7, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 7, 2021, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh